### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **JAMES E. GILMORE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-CV-0257-CVE-PJC** |
| | ) | |
| **KEN SALAZAR, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

Now before the Court is the Federal Defendants' Motion to Dismiss and Memorandum in

Support (Dkt. # 19).  Defendants Ken Salazar, Secretary of the Interior, United States Department

of the Interior (DOI), Robert K. Impson, Acting Director, Eastern Oklahoma Region, Bureau of

Indian Affairs (BIA), and Paul Yates, Superintendent of the Miami Agency of the BIA (collectively

referred to as the Federal Defendants), ask the Court to dismiss plaintiffs' claims against them (First,

Second, Fifth, and Sixth Causes of Action) due to plaintiffs' failure to exhaust administrative

remedies as required by the Administrative Procedures Act, 5 U.S.C. §§ 701-706 (APA).  Plaintiffs

respond that they were not required to exhaust their administrative remedies for APA or non-APA

claims before seeking judicial review.

### I.

Plaintiffs James E. Gilmore, Tammy S. Gilmore Springer, and Joanna K. Stand are members

of the Quapaw Tribe of Oklahoma (the Tribe) and have an undivided percentage interest in the

Sooner and/or Ottawa Chat Piles (the Chat Piles) located in northeastern Oklahoma.  Chat was

created as a byproduct of the mining process.  Mining companies removed ore from the ground and

stripped any valuable metals from the ore, and the remainder, chat, was stored on the surface in the

form of chat piles.  See Quapaw Tribe of Oklahoma v. Blue Tee Corp., 2008 WL 2704482, *1 (N.D.

Okla. July 7, 2008).  Plaintiffs allege that the Chat Piles are subject to regulation by the United

States government, because the Chat Piles are located, in whole or in part, on restricted Tribal land[1]

and the property is held in trust for the benefit of Tribal members.  Dkt. # 2, at 4-5.  However, the

Estate of Joseph E. Mountford (the Estate) claims to hold title to approximately two-thirds of the

Sooner Chat Pile, and Bingham Sand & Gravel Company, Inc. (Bingham) claims that it has title to

at least three-fourths of the Ottawa Chat Pile.  Id. at 5.  The interests held by the Estate and Bingham

are considered fee, or non-Indian, interests in the Chat Piles.

Plaintiffs allege that the Estate and Bingham began removing chat from the Chat Piles in

2001 or 2002, and several millions tons of chat have been removed since that time.  Id.  According

to plaintiffs, the Estate has removed chat from the Sooner Chat Pile using a third-party vendor, and

Bingham has removed chat from the Ottawa Chat Pile.  Id. at 5-6.  Plaintiffs allege that the Estate

and Bingham have re-sold the chat without receiving the consent of the Tribal owners or permission

from the BIA.  Id. at 6.  They claim that the Chat Piles contain a combination of trust property

belonging to Tribal members and fee property, and chat from Chat Piles cannot be removed without

permission of the BIA and an agreement with the Indian owners concerning their share of the chat

being removed.  Id.  On January 21, 2002, the BIA notified the Estate and Bingham that chat could

not be removed without approval of the BIA and the Secretary of the Interior, and asked Bingham

and the Estate to cease removal of chat.  Dkt. # 23-2, at 7.  Plaintiffs allege that the Estate continued

to remove and sell chat from the Sooner Chat Pile without approval from the BIA.  Dkt. # 2, at 6.

---

[1]     Plaintiffs claim that the ownership interests of the land underlying the Chat Piles is disputed, and seek a determination of those ownership interests as part of the relief sought in this case. Dkt. # 2, at 14.

Plaintiffs claim that they notified the BIA of the Estate's and Bingham's conduct beginning in at least 2005, and they asked the BIA and the Secretary of the Interior to intervene on their behalf to prevent removal of chat.  Id. at 6.  Plaintiffs and other Indian owners of chat, through retained counsel, sent a letter to the DOI's Tulsa Field Solicitor's Office on November 30, 2005, and requested that the BIA (1) halt the removal and sale of chat from the Sooner Chat Pile; (2) account for all chat removed from the Sooner Chat Pile since October 6, 1997; (3) issue a report concerning payment received by Bingham for all chat removed from the Sooner Chat Pile; and (4) determine the legality of the sale of chat from the Sooner Chat Pile.  Dkt. # 23-2, at 13-16.  Plaintiffs claim that the BIA took no action on their requests, even though their letter stated that the matter was time-sensitive and needed to be resolved within 90 days.  See id. at 16.  Plaintiffs allege that Bingham has provided a partial accounting of chat removed from the Chat Piles, but plaintiffs claim that the documents supporting Bingham's accounting are "inaccurate and incomplete" and Bingham has not complied with their request for a complete accounting.  Dkt. # 2, at 7.

Plaintiffs filed this case on April 23, 2010 alleging six claims: (1) claim for accounting and for determination of ownership of the Sooner and Ottawa Chat Piles against the Federal Defendants; (2) claim for judicial review of agency action under the APA against the Federal Defendants; (3) claim for accounting of chat removed from the Sooner and Ottawa Chat Piles against the Estate; (4) claim for conversion of restricted Indian property against Bingham; (5) claim for injunctive and declaratory relief against all defendants; and (6) claim for attorney fees under 28 U.S.C. § 2412(b).  Plaintiffs allege that the Federal Defendants have refused to take any action on their requests for government intervention and accounting and, "in view of the [Federal Defendants'] continuing

inaction and/or refusal to take action, the issues in this action present effectively final agency actions subject to immediate judicial review under 5 U.S.C. § 704." Id. at 10.

There is also a separate state court case between plaintiffs James E. Gilmore and Tammy S. Gilmore Springer and the non-federal defendants pending in the District Court of Ottawa County, Oklahoma. The Estate and Bingham filed a lawsuit in the District Court of Ottawa County alleging that James E. Gilmore, Tammy S. Gilmore Springer, and Jan Killough unlawfully prevented the Estate and Bingham from removing chat from the Chat Piles, and they seek temporary and permanent injunctive relief. Dkt. # 19-1, at 1-6. They also request monetary damages for any lost profits caused by the state court defendants' interference with the removal of chat. Id. at 5-6. The District Court of Ottawa County has issued a temporary injunction preventing state court defendants from interfering with Bingham and the Estate's removal of chat from the Chat Piles. Dkt. # 19-2, at 1-3. It appears that the state court case is still pending and the temporary injunction is in effect.

The Federal Defendants have filed a motion to dismiss plaintiffs' claims against them, because the government has not waived sovereign immunity for plaintiffs' claims and plaintiffs have not exhausted their administrative remedies. Dkt. # 19. They argue that all of plaintiffs' claims fall within the APA, and that neither the BIA nor DOI will be deemed to have made a final agency action until plaintiffs exhaust all administrative remedies available under 25 C.F.R. Part 2. Plaintiffs respond that any further exhaustion of administrative remedies would be futile in light of the BIA's history of inaction on plaintiffs' requests for agency action, and immediate judicial review is required to protect plaintiffs' interests in the Chat Piles.

## II.

Exhaustion of administrative remedies under the APA is an issue of subject matter jurisdiction, and this issue is analyzed under Fed. R. Civ. P. 12(b)(1).  Davis ex rel. Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003).  Sovereign immunity is also a limitation on the Court's subject matter jurisdiction, and this aspect of the Federal Defendants' motion should also be considered as a challenge to the Court's subject matter jurisdiction.  See Clymore v. United States, 415 F.3d 1113, 1118 n.6 (10th Cir. 2005).  When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff.  In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . .  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03.  The Federal Defendants rely on evidence outside the pleadings, and the Court will construe their motion as a factual attack on the jurisdictional facts alleged by plaintiffs.  When ruling on a factual attack on subject matter jurisdiction, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment.  Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003); see also Davis ex rel. Davis,

343 F.3d at 1295-96 (district court had authority to review evidence outside the pleadings on issue of exhaustion of administrative remedies without converting the defendant's motion to dismiss into a motion for summary judgment).  To defeat the Federal Defendant's Rule 12(b)(1) motion, plaintiffs "must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence."  Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003).

## III.

The Federal Defendants argue that plaintiffs have not exhausted their administrative remedies, and this creates two separate jurisdictional defects that require the Court to dismiss the case.[2]  First, the Federal Defendants assert that 5 U.S.C. § 702 provides a waiver of sovereign immunity for claims for declaratory or injunctive relief only as to a "final agency action," and no final agency action can occur without complete exhaustion of administrative remedies.  Dkt. # 19, at 7-12.  Second, the Federal Defendants claim that plaintiffs' failure to exhaust all administrative remedies available under 25 C.F.R. Part 2 is a jurisdictional defect that deprives the Court of subject matter jurisdiction.  Id. at 13-16.

## A.

The Federal Defendants claim that there is no final agency action within the meaning of 5 U.S.C. § 704 for the Court to review, and plaintiffs' claims do not fall within the waiver of sovereign immunity provided by § 702.  Plaintiffs respond that § 702 is a broad waiver of sovereign immunity

---

[2]     The Federal Defendants also argue that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not waive the United States' sovereign immunity.  Dkt. # 10, at 7.  Plaintiffs do not rely on the Declaratory Judgment Act as an independent waiver of sovereign immunity in their complaint, and it is not necessary to consider this argument.

as to all claims for declaratory or injunctive relief against the United States, and the plaintiffs' alleged failure to exhaust administrative remedies is irrelevant to the issue of sovereign immunity.

The United States is a sovereign that is immune from suit unless it consents to be sued. Sydnes v. United States, 523 F.3d 1179, 1182-83 (10th Cir. 2008).  "[C]onsent may be found 'only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text.'"  Rural Water Dist. Wagoner County No. 2 v. Grand River Dam Authority, 577 F.3d 1255, 1260 (10th Cir. 2009).  General jurisdictional statutes, such as 28 U.S.C. § 1331, do not waive the government's sovereign immunity from suit.  Normandy Apartments, Ltd. v. United States Dep't of Housing and Urban Development, 554 F.3d 1290, 1295 (10th Cir. 2009); Eagle-Picher Indus., Ind. v. United States, 901 F.2d 1530, 1532 (10th Cir. 1990).

The APA contains a waiver of sovereign immunity as to claims for declaratory or injunctive relief against government agencies.  Section 702 states:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.  This statute provides a "general waiver of sovereign immunity in all civil actions seeking equitable relief on the basis of legal wrongs for which government agencies are

accountable." United Tribe of Shawnee Indians v. United States, 253 F.3d 543, 549 (10th Cir. 2001).   Section 702 also waives the government's sovereign immunity for "most claims for nonmonetary relief," whether the plaintiff's claims are APA or non-APA claims.   See Robbins v. United States Bureau of Land Management, 438 F.3d 1074, 1080 (10th Cir. 2006).   However, the scope of the waiver of sovereign immunity is limited, and § 702 does not permit a case to proceed if another statute imposes limitations on a court's power to hear a case or the relief that can be awarded.   Neighbors for Rational Development, Inc. v. Norton, 379 F.3d 956, 961 (10th Cir. 2004).

The Federal Defendants argue that 5 U.S.C. § 704 limits the scope of the waiver of sovereign immunity contained in § 702, and only a "final agency action" is subject to judicial review.   Section 704 provides:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

5 U.S.C. § 704. However, some courts have found that § 704 is not a limitation on the waiver of sovereign immunity in § 702, and the "final agency action" requirement of § 704 has no bearing on whether the government has waived its immunity from suit for nonmonetary relief.   Hanson v. Wyatt, 552 F.3d 1148, 1173 n.11 (10th Cir. 2008) (Gorsuch, J., concurring); Trudeau v. Federal Trade Comm'n, 456 F.3d 178, 187 (D.C. Cir. 2006); Snyder Computer Systems, Inc. v. LaHood, 2010 WL 3167851, *2 (S.D. Ohio Aug. 10, 2010); see also Gros Ventre Tribe v. United States, 469 F.3d 801, 808 (9th Cir. 2006) (acknowledging that the law is unsettled as to whether the final agency

action requirement of § 704 modifies the waiver of sovereign immunity in § 702, but deciding the case on other grounds). While plaintiffs' alleged failure to exhaust administrative remedies may create a separate barrier to bringing this lawsuit, the Federal Defendants have not shown that the lack of a "final agency action" makes the waiver of sovereign immunity in § 702 inapplicable. It is not settled law that the requirement of a final agency action under § 704 applies to waiver of sovereign immunity in § 702.

The Court finds it unnecessary to resolve this legal issue. For the purpose of ruling on the Federal Defendants' motion to dismiss, the Court assumes that plaintiffs' claims fall within § 702's waiver of sovereign immunity. The Federal Defendants' argument is more appropriately treated as a request to dismiss plaintiffs' claims due to plaintiffs' failure to exhaust administrative remedies.[3]

**B.**

The Federal Defendants also argue that plaintiffs have not exhausted their administrative remedies, and judicial review of plaintiffs' claims under § 704 is not permitted. Plaintiffs respond that their First, Fifth, and Sixth[4] Causes of Action are non-APA claims, and they are not required to exhaust administrative remedies for these claims. Plaintiffs' Second Cause of Action is clearly an APA claim, but plaintiffs argue that their failure to exhaust administrative remedies is excused

---

[3]     The Court also notes that neither plaintiffs nor the Federal Defendants briefed this issue and it would not be appropriate to rule on it without additional briefing.

[4]     Plaintiffs' Sixth Cause of Action is a claim for attorney fees. If plaintiffs' other claims against the Federal Defendants are dismissed, this claim will become moot because there will be no underlying claim for which plaintiff could accrue attorney fees compensable under the Equal Access to Justice Act, 42 U.S.C. § 2412.

by the Federal Defendants' "unlawfully withheld or unreasonably delayed" actions, and judicial review is permitted under 5 U.S.C. § 706(1) without exhaustion of administrative remedies.[5]

Section 704 provides for judicial review of "final agency action."  Agency action is not final until a party has exhausted all available administrative remedies prescribed by statute or an agency rule.  See Darby v. Cisneros, 509 U.S. 137, 146 (1993).  The Tenth Circuit has stated that exhaustion of administrative remedies:

> affords administrative agencies an opportunity to correct their own errors prior to judicial intervention, thus mooting many issues before they reach the courts.  The exhaustion requirement also serves to maximize efficient administrative process by preventing repeated judicial interruption.  Additional reasons for the exhaustion doctrine include respect for "notions of administrative autonomy" and an interest in preserving the effectiveness of agency operations, which could be threatened by "frequent and deliberate flouting of administrative processes."

St. Regis Paper Co. v. Marshall, 591 F.2d 612 (10th Cir. 1979).  If exhaustion of administrative remedies is required by statute or agency rule, a federal court may not assert jurisdiction over a case until the party seeking judicial review has exhausted his administrative remedies.  White Mountain Apache Tribe v. Hodel, 840 F.2d 675 (9th Cir. 1988).

Plaintiffs argue that their First, Fifth, and Sixth Causes of Action are not APA claims, because they are not seeking review of an agency decision and their non-APA claims may be pursued under federal common law.  However, a review of plaintiffs' complaint shows that these claims are directly based on the BIA's failure to act in accordance with plaintiffs' November 30, 2005 letter, and plaintiffs sought the same relief through an administrative process.  In their letter, plaintiffs asked the BIA to provide an accounting of chat removed from the Sooner Chat Pile, issue

---

[5]     Plaintiffs do not cite § 706 in their complaint but, instead, allege that further attempts to exhaust administrative remedies would be futile and the ongoing removal of chat requires immediate judicial review. Dkt. # 2, at 10.

a report concerning ownership of chat in the Sooner Chat Pile, and halt the removal of chat by Bingham.  Dkt. # 23-2, at 15.  In this case, plaintiffs ask the Court to, <u>inter alia</u>, order the BIA to determine ownership of the chat and issue an accounting of chat removed from the Sooner and Ottawa Chat Piles, and declare that no chat from the Sooner and Ottawa Chat Piles can be sold without consent of the BIA.  Dkt. # 2, at 8-15.  A plain reading of the complaint shows plaintiffs seek the same relief in their APA claim under § 706 directly challenging the APA's alleged inaction and in their claims for equitable, declaratory, and injunctive relief.  Plaintiffs claim that they may proceed with statutory and common law claims to enforce the government's obligations concerning property held in trust for Tribal members.  Dkt. # 23, at 18-20. The Federal Defendants do not dispute that the federal government has trust duties to the Indian owners of chat, but claims that plaintiffs have not identified a common law or statutory basis to support a non-APA claim.  Dkt. # 28, at 7.  The Court has reviewed the complaint, and it does not clearly set out the statutory or common law basis for plaintiffs' First and Fifth Causes of Action against the Federal Defendants. Without an independent legal basis for these claims, the only way plaintiffs can challenge the BIA's alleged failure to provide an accounting or halt the removal of chat from the Chat Piles is under the APA.

Plaintiffs claim that other federal courts have allowed Indians or Indian tribes to proceed with common law claims for accounting of trust property without exhausting administrative remedies or pursuing relief under the APA.  To support this argument, plaintiffs cite two cases decided by the Western District of Oklahoma in which Indian tribes sought accounting of resources maintained by the BIA for the benefit of the Indian tribes.  <u>See</u> <u>Tonkawa Tribe of Indians of Oklahoma v. Kempthorne</u>, 2009 WL 742896 (W.D. Okla. Mar. 17, 2009); <u>Otoe-Missouria Tribe of</u>

11

Oklahoma v. Kempthorne, 2008 WL 5205191 (W.D. Okla. Dec. 10, 2008).  Although those cases do not clearly identify the basis for the plaintiffs' claims for accounting, it appears that the Tonkawa Tribe of Indians of Oklahoma alleged APA and non-APA claims and the Otoe-Missouria Tribe of Oklahoma was permitted to proceed under the APA only.  See Tonkawa Tribe of Indians of Oklahoma, 2009 WL 742896, at * 5 ("plaintiff alleges claims not only under § 706 of the APA but also under other federal statutory law and federal common law . . .); Otoe-Missouria Tribe of Oklahoma, 2008 WL 5205191, at *2-3 (examining common law and statutory sources for a duty to account for trust property and, without determining whether such claims existed, permitting the plaintiff to proceed under §§ 706(1) and (2)).  Both cases rely on the American Indian Trust Fund Management Reform Act, 25 U.S.C. § 4001 et seq., to show that the Secretary of the DOI has a duty to account for trust property.  However, neither case provides any analysis concerning the existence of a common law claim for accounting or a private right of action under the American Indian Trust Fund Management Reform Act, and the court in Otoe-Missouria Tribe of Oklahoma expressly declined to reach this issue.  See Otoe-Missouria Tribe of Oklahoma, 2008 WL 5205191, at *2 n.2. In any event, plaintiffs do not cite § 4044 or any part of the American Indian Trust Fund Management Reform Act in their complaint or response to the Federal Defendants' motion to dismiss.  Neither Otoe-Missouria Tribe of Oklahoma nor Tonkawa Tribe of Oklahoma show that another court has recognized an equitable or federal common law claim for accounting of Indian trust property.

Plaintiffs' response to the Federal Defendants' motion to dismiss is based on an assumption that they can proceed with an equitable or federal common law claim for accounting, but plaintiffs fail to acknowledge that they have requested a broad range of declaratory and injunctive relief from

the Court.  In their Fifth Cause of Action, plaintiffs state that they are seeking an order "to compel

the defendants to perform their legal duties and obligations," and "orders from the Court" to:

(a)     Determin[e] the correct status of the restricted Indian title in the chat in the
        Sooner and Ottawa Piles, as well as in the underlying trust land, including the
        legality of the various conveyances by which [the Estate] purports to claim
        a two-thirds (66.67% percent [sic]) interest in the chat in the Sooner Pile, and
        up to a one hundred percent interest in the underlying land, on behalf of [the
        Estate] and other interests in the Ottawa Pile and underlying land;

(b)     Determin[e] that trust chat, which the Secretary has determined to be
        categorized for legal purposes as trust personalty, lawfully cannot, and could
        not in the past, be conveyed to any party, including in fee (to non-Indian
        parties) except under controlling law and pursuant to the Secretary's trust
        obligations;

(c)     Establish[] that Indian trust chat may not lawfully be removed from the
        Sooner and Ottawa Piles, unless in accordance with applicable federal laws,
        including but not limited to pursuant to chat leases/sales agreements endorsed
        by the Restrict [sic] Owners and approved by the Secretary, and pursuant to
        compliance with environmental laws and directives, including but not limited
        to the United States Environmental Protection Agency's Record of Decision
        for Operable Unit 4 at the Tar Creek Superfund Site and 40 C.F.R. Part 278;

(d)     Direct[] the Secretary, by and through the BIA, to provide a full and
        complete accounting concerning the chain of title to the trust chat in the
        Sooner and Ottawa Piles and to the underlying land, and also of the removal
        and disposition of chat from the chat piles since a date to be determined by
        the Restricted Owners.

Dkt. # 2, at 14-15.  The complaint shows that plaintiffs' claim for accounting from the Federal

Defendants is just a small part of the relief sought in this case.  Even if the Court were to assume that

plaintiffs could proceed with non-APA claims for accounting, they have cited no statutory authority

or federal common law authorizing general claims for declaratory and injunctive relief challenging

agency action.  Instead, this is a classic APA claim asking the Court to review agency action (or

inaction) and order the agency to take certain action.  Plaintiffs have cited no authority showing that

they may proceed with a non-APA claim for declaratory and injunctive relief (Fifth Cause of Action)

against the Federal Defendants.  The Court will treat plaintiffs' Fifth Cause of Action as an APA

claim.[6]

As to plaintiffs' non-APA claim for accounting (First Cause of Action), the Court finds that

it is unnecessary to determine whether plaintiffs may proceed with a federal common law claim for

accounting because, even if plaintiffs could proceed with such a claim, the doctrine of exhaustion

of administrative remedies may be applied in non-APA cases as a matter of judicial discretion.

United Tribe of Shawnee Indians, 253 F.3d at 550.  The Tenth Circuit has stated that:

> "The doctrine of exhaustion of administrative remedies is one among related
> doctrines-including abstention, finality, and ripeness-that govern the timing of
> federal court decisionmaking." Exhaustion "serves the twin purposes of protecting
> administrative agency authority and promoting judicial efficiency."

Id. (internal citations omitted).  The Tenth Circuit has also recognized that the DOI has regulations

requiring the exhaustion of administrative remedies and, "[u]nder [DOI] regulations, if an agency

decision is subject to appeal within the agency, a party must appeal the decision to the highest

authority within the agency before judicial review is possible."  Coosewoon v. Meridian Oil Co.,

25 F.3d 920, 924 (10th Cir. 1994).  Thus, even if plaintiffs could assert non-APA claims for

accounting, plaintiffs may still be required to exhaust their administrative remedies before seeking

judicial review of alleged agency inaction on their request for accounting.

The Federal Defendants state that plaintiffs were required to exhaust their administrative

remedies under 25 C.F.R. §§ 2.8 and 2.9 before seeking judicial review.  Section 2.8 provides:

---

[6]     It appears that plaintiffs seek declaratory and injunctive relief from the Estate and Bingham
as part of the Fifth Cause of Action, but the complaint does identify the legal basis for these
claims.

(a) A person or persons whose interests are adversely affected, or whose ability to protect such interests is impeded by the failure of an official to act on a request to the official, can make the official's inaction the subject of appeal, as follows:

(1) Request in writing that the official take the action originally asked of him/her;

(2) Describe the interest adversely affected by the official's inaction, including a description of the loss, impairment or impediment of such interest caused by the official's inaction;

(3) State that, unless the official involved either takes action on the merits of the written request within 10 days of receipt of such request by the official, or establishes a date by which action will be taken, an appeal shall be filed in accordance with this part.

(b) The official receiving a request as specified in paragraph (a) of this section must either make a decision on the merits of the initial request within 10 days from receipt of the request for a decision or establish a reasonable later date by which the decision shall be made, not to exceed 60 days from the date of request. If an official establishes a date by which a requested decision shall be made, this date shall be the date by which failure to make a decision shall be appealable under this part. If the official, within the 10-day period specified in paragraph (a) of this section, neither makes a decision on the merits of the initial request nor establishes a later date by which a decision shall be made, the official's inaction shall be appealable to the next official in the process established in this part.

25 C.F.R. § 2.8.  If this appeal is unsuccessful or no action is taken by the BIA on the appeal, BIA

regulations provide for an additional appeal:

(a) An appellant must file a written notice of appeal in the office of the official whose decision is being appealed. The appellant must also send a copy of the notice of appeal to the official who will decide the appeal and to all known interested parties. The notice of appeal must be filed in the office of the official whose decision is being appealed within 30 days of receipt by the appellant of the notice of administrative action described in § 2.7. A notice of appeal that is filed by mail is considered filed on the date that it is postmarked. The burden of proof of timely filing is on the appellant. No extension of time shall be granted for filing a notice of appeal. Notices of appeal not filed in the specified time shall not be considered, and the decision involved shall be considered final for the Department and effective in accordance with § 2.6(b).

(b) When the appellant is an Indian or Indian tribe not represented by counsel, the official who issued the decision appealed shall, upon request of the appellant, render such assistance as is appropriate in the preparation of the appeal.

(c) The notice of appeal shall:

(1) Include name, address, and phone number of appellant.

(2) Be clearly labeled or titled with the words "NOTICE OF APPEAL."

(3) Have on the face of any envelope in which the notice is mailed or delivered, in addition to the address, the clearly visible words "NOTICE OF APPEAL."

(4) Contain a statement of the decision being appealed that is sufficient to permit identification of the decision.

(5) If possible, attach either a copy of the notice of the administrative decision received under § 2.7, or when an official has failed to make a decision or take any action, attach a copy of the appellant's request for a decision or action under § 2.8 with a written statement that the official failed to make a decision or take any action or to establish a date by which a decision would be made upon the request.

(6) Certify that copies of the notice of appeal have been served on interested parties, as prescribed in § 2.12(a).

25 C.F.R. § 2.9.  BIA regulations also clarify that "[n]o decision, which at the time of its rendition is subject to appeal to a superior authority in the Department, shall be considered final so as to constitute Departmental action subject to judicial review under 5 U.S.C. § 704 . . . ."  25 C.F.R. § 2.6.  It is clear that the BIA has an administrative procedure to review claims concerning "persons whose interests are adversely affected, or whose ability to protect such interests is impeded by the failure of an official to act on a request to the official."   25 C.F.R. § 2.8.  Plaintiffs allege that the Miami Agency of the BIA failed to take action on their requests for assistance in halting the removal of chat from the Sooner and Ottawa Chat Piles.  Dkt. # 2, at 6.  Under §§ 2.8 and 2.9, plaintiffs should have made a formal request for the Miami Agency to consider their request for BIA action

16

and, if that was unsuccessful, should have pursued an administrative remedy with a higher-level official at the BIA.

Plaintiffs argue that they can proceed with a federal common law claim for accounting without exhausting their administrative remedies. However, plaintiffs' claims are substantially broader that a simple request for accounting. Plaintiffs also ask the Court to determine the ownership status of the Chat Piles and the underlying land, declare that no chat can be sold without the consent of the Secretary, and enjoin the removal of chat under federal law. Dkt. # 2, at 14-15. There is no dispute that plaintiffs have not fully exhausted their administrative remedies with a superior authority in the BIA or DOI. Plaintiff James Gilmore has submitted an affidavit that he began notifying the Miami Agency of the BIA of Bingham's removal of chat in 2002, and he most recently visited the Miami Agency in April 2010. Dkt. # 23-2, at 3-4. However, he made no attempt to appeal the alleged inaction of the Miami Agency to the Eastern Oklahoma Regional Office or any higher level officer within the BIA or DOI.[7] Plaintiffs are asking the Court to become directly involved in a dispute over ownership interests in chat between Indian and non-Indian owners and halt the sale and removal of chat from the Chat Piles. These matters fall within the BIA's expertise in handling trust and restricted Indian property, and should be addressed by a superior authority at the BIA before judicial review will be appropriate.

Plaintiffs have also alleged a separate claim under the APA (Second Cause of Action) and argue that they are not required to exhaust administrative remedies before proceeding with this claim, because the BIA has "unlawfully withheld or unreasonably delayed" action on their request

---

[7]     Plaintiffs' counsel confirmed at the status conference on August 31, 2010 that plaintiffs have not attempted to appeal any action or inaction by the Miami Agency to a superior authority within the BIA or DOI. Dkt. # 36, at 8-9.

for the BIA to halt the sale of chat and provide an accounting.  Under § 706, federal district courts have the authority to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706.  A claim under § 706(1) can proceed only "where a plaintiff asserts that an agency failed to take a discrete agency action that it is *required to take*."  Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004).  Requests for discretionary agency action are not reviewable under § 706(1).  Benzman v. Whitman, 532 F.3d 119, 131 (2d Cir. 2008); Center for Biological Diversity v. Veneman, 394 F.3d 1108, 1112-13 (9th Cir. 2005).  The challenged failure to act must be a discrete action compelled by statute, not simply an agency's failure to carry out a broad congressional mandate in the manner sought by a particular party.  See Norton, 542 U.S. at 66-67.  When a plaintiff establishes that an agency has "unlawfully withheld or unreasonably delayed" action, review of the plaintiff's claim is not limited to the administrative record because there is no final agency action  for a court to review.  Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000).

Plaintiffs claim that the BIA had a discrete duty to provide an accounting upon request by plaintiffs, and the BIA's failure to comply with plaintiffs' request constitutes a discrete agency action unlawfully withheld under § 706(1).  However, plaintiffs' demand for an accounting is part of their broader request for agency involvement in protecting their interests in the Sooner and Ottawa Chat Piles.  Plaintiffs also ask the BIA or the Court to halt the removal of chat from Sooner and Ottawa Chat Piles, determine the ownership interests of the chat in the Chat Piles and the underlying land, and determine the legality of any past removal and sale of chat.  Plaintiffs are not challenging a discrete action or inaction by the BIA.  Instead, plaintiffs are asking the Court to compel the BIA to carry out its broad mandate to manage Indian trust property and resolve several

distinct legal disputes between Indian and non-Indian owners of chat.  Plaintiffs' APA claim is not based on the BIA's alleged failure to carry out a discrete action, and this case is distinguishable from situations where the sole relief sought was an accounting of assets held in trust for Indian tribes or members of Indian tribes.

Even if the Court were to assume that the BIA had a discrete duty to perform an accounting, plaintiffs have not shown that they were diligent in requesting this relief from the BIA or that the BIA unlawfully withheld action on plaintiffs' requests for accounting.  Plaintiffs rely heavily on Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001), to support their argument that § 706(1) is an exception to the general rule that only final agency action is reviewable.  See Dkt. # 23, at 20. However, Cobell does not stand for the proposition that the BIA's failure or delay in providing an accounting is always agency action unlawfully withheld under § 706(1).  Plaintiffs' failure to fully exhaust their administrative remedies calls into question whether the BIA was even aware of plaintiffs' demand for an accounting or agency intervention and, due to plaintiffs' failure to pursue administrative remedies, it is not clear that agency action has been unlawfully withheld.

Plaintiffs argue that they are not required to exhaust administrative remedies under § 704, because they will suffer "undue prejudice" unless they obtain immediate judicial review of their claims and further exhaustion of administrative remedies would be futile.  Dkt. # 23, at 23-29. Although the APA requires exhaustion of administrative remedies, courts have created exceptions to this requirement.  Exhaustion is not required when:

> (1) it would occasion undue prejudice to subsequent assertion of a court action, for example through excessive delay; (2) an agency may not be empowered to grant relief, for example "because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute" or because "agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested"; or (3) the agency is biased.

19

Hettinga v. United States, 560 F.3d 498, 503 (D.C. Cir. 2009) (quoting McCarthy v. Madigan, 503 U.S. 140, 145 (1992)).

Plaintiffs cannot claim that exhaustion of administrative remedies will cause undue prejudice, because plaintiffs have been aware of Bingham's and the Estate's conduct for several years and were aware that the Miami Agency of the BIA had taken no action to resolve the dispute between Indian and non-Indian owners of chat.  Plaintiffs claim that the BIA and DOI have made a "decision" to ignore plaintiffs' requests for help in resolving this matter, but they fail to note that they made no attempt to obtain relief beyond the local level of the BIA or the DOI. In November 2005, plaintiffs sent a letter to the DOI stating that they could not wait more than 90 days for the agency to act and they would be forced to file a lawsuit if no action was taken on their requests. However, plaintiffs waited almost five years before filing this lawsuit and have presented no evidence that they formally asked the Miami Agency of the BIA or any higher-level BIA or DOI official to take any action on their requests for agency assistance.  Plaintiffs believed that this was a time-sensitive matter in November 2005 but took no action to expedite agency review of their claims or to obtain immediate judicial review, and any prejudice that will be suffered by plaintiffs by lack of judicial review has been created as much by plaintiffs' inaction as by the alleged inaction of the BIA or DOI.  Thus, immediate judicial review is not required to prevent undue prejudice to plaintiffs.

Plaintiffs also claim that the exhaustion of administrative remedies would be futile, because the BIA had adopted the position in other cases that it is not required to provide an accounting for non-monetary trust assets.  Dkt. # 23, at 27-29.  Plaintiffs cite the two cases from the Western District of Oklahoma previously considered by this Court, as well as a case in the Eastern District

20

of Oklahoma, <u>Seminole Nation of Oklahoma v. Salazar</u>, 2009 WL 919435 (E.D. Okla. Mar. 31, 2009), and assert that the Federal Defendants argued in each of those cases that they had no duty to account for non-monetary trust property. However, as plaintiffs note, each of those cases concerned claims for accounting only. In this case, plaintiffs seek a broad range of declaratory, injunctive, and equitable relief, and plaintiffs' claim for accounting is simply a small part of the relief sought. The Court would greatly benefit by an administrative decision on the entire relief sought by plaintiffs, even if plaintiffs do not ultimately obtain an accounting from the BIA.

The Court finds that plaintiffs' claims against the Federal Defendants should be dismissed due to plaintiffs' failure to exhaust administrative remedies. Plaintiffs have attempted to cast many of their claims as non-APA claims, but they have cited no statutory or common law authority providing a basis for these claims other than the APA. They also have not shown that any exception to exhaustion requirement applies, and there is no final agency action for the Court to review under the APA.

## IV.

The dismissal of plaintiffs' claims against the Federal Defendants requires the Court to determine whether it has subject matter jurisdiction over plaintiffs' remaining claims. The complaint alleges subject matter jurisdiction based on the existence of a federal question and the APA. However, plaintiffs' federal claims have been dismissed and it is not clear that the Court has jurisdiction over plaintiffs' claims against the Estate and Bingham.

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. <u>Merida Delgado v. Gonzales</u>, 428 F.3d 916, 919 (10th Cir. 2005); <u>Penteco Corp. Ltd. Partnership--1985A v. Union Gas System, Inc.</u>, 929 F.2d 1519, 1521 (10th Cir.

21

1991).  Plaintiffs have the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction.  McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case."); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction.").  The Court has an obligation to consider whether subject matter jurisdiction exists, even if the parties have not raised the issue.  The Tenth Circuit has stated that "[f]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006).

The Court finds that there is a substantial question as to whether it has subject matter jurisdiction over plaintiffs' claims against the Estate and Bingham, and the parties should be given an opportunity to brief this issue.  Plaintiffs' claims against the Estate and Bingham for accounting and conversion are state law claims.  The federal issues raised in plaintiffs' complaint may be sufficiently substantial to justify the exercise of federal question jurisdiction, but the complaint does not clearly state the basis for plaintiffs' claims against the Estate and Bingham.  See Nicodemus v. Union Pacific Corp., 440 F.3d 1227, 1236 (10th Cir. 2006).  Tribal members are treated as citizens of the state where they reside for the purpose of establishing diversity jurisdiction under 28 U.S.C. § 1332, and a federal court may hear a case involving tribal members under § 1332 if the requirements for diversity jurisdiction are satisfied.  Richardson v. Malone, 762 F. Supp. 1463, 1466 (N.D. Okla. 1991).  However, plaintiffs have not alleged that the parties are diverse or that the

amount in controversy exceeds $75,000, and it does not appear that the Court can exercise diversity jurisdiction over plaintiffs' claims against the Estate and Bingham. Thus, it is not clear that the Court has subject matter jurisdiction over this case.

**IT IS THEREFORE ORDERED** that the Federal Defendants' Motion to Dismiss and Memorandum in Support (Dkt. # 19) is **granted**, and plaintiffs' claims against Ken Salazar, Robert Impson, and Paul Yates are **dismissed**.  Ken Salazar, Robert Impson, and Paul Yates are **dismissed** as parties to this case.

**IT IS FURTHER ORDERED** that the Federal Defendants' Motion to Modify or Clarify June 28, 2010 Order and Supporting Memorandum (Dkt. ## 24, 25) is **moot**.[8]

**IT IS FURTHER ORDERED** that the remaining parties are directed to file simultaneous briefs within fourteen (14) days, or by **October 5, 2010**, of this Opinion and Order as to the existence of federal subject matter jurisdiction over plaintiffs' claims against the Estate and Bingham.

**DATED** this 21st day of September, 2010.

_Claire V. Eagl_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

---

[8] The Federal Defendants asserted that they were exempt from the requirement to provide initial disclosures under Fed. R. Civ. P. 26, because discovery outside of the administrative record is not permitted in APA cases. Dkt. ## 24, 25.  However, the Court has dismissed plaintiffs' claims against the Federal Defendants, and this motion is moot.