UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JAMES E. GILMORE, et al.,                )
                                         )
            Plaintiffs,                  )
                                         )
v.                                       )        Case No. 10-CV-0257-CVE-PJC
                                         )
KEN SALAZAR, et al.,                     )
                                         )
            Defendants.                  )

## OPINION AND ORDER

On September 21, 2010, the Court dismissed plaintiffs' claims against defendants Ken Salazar, Robert K. Impson, and Paul Yates, and ordered the remaining parties to submit briefs concerning the Court's subject matter jurisdiction over the remaining claims. Dkt. # 37. Plaintiff asserts that the Court has subject matter jurisdiction over plaintiffs' claims under 28 U.S.C. § 1331, because plaintiff's claims are created by federal common law and present significant questions of federal law. Defendants Bingham Sand & Gravel Company, Inc. (Bingham) and Catherine J. Weatherford, personal representative of the Estate of Joseph E. Mountford (the Estate), argue that plaintiffs' claims for accounting and conversion arise under state law, even if plaintiffs' claims incidentally present issues of federal law or their title to property is created by federal law.

### I.

Plaintiffs James E. Gilmore, Tammy S. Gilmore Springer, and Joanna K. Stand allege that they possess an undivided percentage interest in the Sooner and/or Ottowa chat piles (Chat Piles) located in northeastern Oklahoma. Dkt. # 2, at 4-5. They are members of the Quapaw Tribe of Oklahoma (the Tribe) and state that the Chat Piles contain trust property managed by the Bureau of Indian Affairs (BIA). Id. at 5. On April 23, 2010, plaintiffs filed this lawsuit alleging that federal

officials[1] failed to protect plaintiffs' rights in property held in trust for the benefit of plaintiffs and other members of the Tribe.  They claim that the Estate and Bingham have been removing chat from the Chat Piles without authorization from the BIA, and that the BIA ignored plaintiffs' requests to halt the removal of chat or provide an accounting.  Id. at 6-7.  Plaintiffs have also sued the Estate and Bingham seeking an accounting of all chat removed from the Chat Piles, and allege that the Estate and Bingham have converted plaintiffs' property by removing chat from the Chat Piles.  Plaintiffs' conversion claim is based on the theory that they hold an undivided interest in the chat, and that the removal of even a single piece of chat constitutes the removal of trust property from the Chat Piles.  Dkt. # 23-2, at 2-3.  Plaintiffs also seek declaratory and injunctive relief against the Estate and Bingham.  The complaint does not specify whether the claims alleged against the Estate and Bingham are based on state or federal law.

The federal defendants filed a motion to dismiss (Dkt. # 19) on the ground that plaintiffs had not exhausted their administrative remedies.  They argued that plaintiffs' claims against the federal defendants were subject to the exhaustion requirements of the Administrative Procedures Act, 5 U.S.C. § 701 et seq. (APA), but plaintiffs had not complied with the administrative procedures required under 29 C.F.R. §§ 2.8 and 2.9.  Dkt. # 19, at 10-11.  They also asserted that plaintiffs' claims against the federal defendants did not fall within the waiver of sovereign immunity contained in 5 U.S.C. § 702.  Plaintiffs responded that most of their claims against the federal defendants were non-APA claims and no exhaustion of remedies was required.  Dkt. # 23, at 17-20.  Plaintiffs

---

[1]    Plaintiffs named Ken Salazar, Secretary of the United States Department of the Interior, Robert K. Impson, Acting Director of the Eastern Oklahoma Region of the BIA, and Paul Yates, Superintendent of the Miami Agency of the BIA, as defendants.  The Court will refer to these defendants as the "federal defendants" in this Opinion and Order.

acknowledged that one of their claims against the federal defendants was brought under the APA, but they argued that this claims was exempt from any requirement to exhaust administrative remedies under 5 U.S.C. § 706.  Id. at 20-23.  The Court held a status/scheduling  conference on August 31, 2010, and also heard argument on the federal defendants' motion to dismiss.  See Dkt. # 35.

The Court granted the federal defendants' motion to dismiss.  The Court rejected the federal defendants' argument that plaintiffs' claims were barred by the doctrine of sovereign immunity, because the government waived sovereign immunity to claims for declaratory and injunctive relief under § 702, even if plaintiffs had not exhausted their administrative remedies.  Dkt. # 37, at 8. However, the Court rejected plaintiffs' characterization of many of the claims as non-APA claims, because these claims sought the same relief that plaintiffs requested through the administrative process.  Id. at 10.  The Court found that plaintiffs had not exhausted their administrative remedies merely by contacting the local BIA office in Miami, Oklahoma, and plaintiffs were obligated to fully exhaust their administrative remedies before proceeding with their claims against the federal defendants.  Id. at 16-19.  Thus, plaintiffs' claims against the federal defendants were dismissed without prejudice.

The Court directed the remaining parties to submits briefs concerning whether the Court had subject matter jurisdiction over plaintiffs' claims against the Estate and Bingham.  Id. at 21-23. Plaintiffs assert that their claims arise under federal common law and the Court has subject matter jurisdiction under 28 U.S.C. § 1331.  Dkt. # 39.  Plaintiffs argue that the Court should exercise subject matter jurisdiction over all of the remaining claims, even if some of their claims are properly characterized as state law claims, because at least one of plaintiffs' claims arises under federal law

and the Court may exercise supplemental jurisdiction over the entire case.  Id. at 12.  Defendants respond that plaintiffs' claims do not arise under federal law, even if federal law provides plaintiffs' rights or title to property involved in this case.  Dkt. # 40, at 11.  They argue that federal law does not create a private right of action for plaintiffs to obtain relief from defendants, and any federal law issues that might arise in plaintiffs' state law claims are not substantial or disputed.  Id. at 16-21.

There is also a separate case pending in Ottawa County District Court, Oklahoma involving many of the same parties.  Bingham and the Estate sued James E. Gilmore, Tammy S. Gilmore Springer, and Jan Killough alleging that they illegally denied Bingham and the Estate access to the Chat Piles.[2]  Dkt. # 19-1, at 2.  Bingham and the Estate sought injunctive relief and monetary damages from the state court defendants.  The state court entered a temporary injunction preventing the state court defendants from interfering with the removal of chat from the Chat Piles, and it appears that the temporary injunction is still in effect.  See Dkt. # 19-2.

## II.

Following dismissal of plaintiffs' claims against the federal defendants, both parties have submitted briefing as to the existence of subject matter jurisdiction over plaintiffs' remaining claims.  Plaintiffs argue that the Court has subject matter jurisdiction under § 1331, because their claims are based on federal common law.  Defendants contend that plaintiffs' title to the chat may be created by federal statutes or regulations, but that this does not convert claims that would otherwise be state law claims for accounting or conversion into federal claims.

---

[2]    Bingham and the Estate alleged that the state court defendants locked the gate to the Chat Piles  and denied them access to the Chat Piles.  Dkt. # 19-1, at 2.

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. Merida Delgado v. Gonzales, 428 F.3d 916, 919 (10th Cir. 2005); Penteco Corp. Ltd. Partnership--1985A v. Union Gas System, Inc., 929 F.2d 1519, 1521 (10th Cir. 1991). Plaintiffs have the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178, 182 (1936) ("It is incumbent upon the plaintiff properly to allege the jurisdictional facts, according to the nature of the case."); Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002) ("The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction."). The Court has an obligation to consider whether subject matter jurisdiction exists, even if the parties have not raised the issue. The Tenth Circuit has stated that "[f]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006).

The federal question statute confers jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "'aris[es] under' federal law within the meaning of § 1331 . . . if 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh 547 U.S. 677, 689-90 (2006) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28 (1983)). The "well-pleaded complaint rule" requires that the complaint itself present the federal question, rather than an anticipated defense. See Skelly Oil

5

Co. v. Phillips Petroleum Co., 339 U.S. 667, 672 (1950); Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986) ("[a] defense that raises a federal question is inadequate to confer federal jurisdiction"); Constr. Laborers Vacation Trust, 463 U.S. at 10 ("a federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise").

Plaintiffs argue that claims for accounting of Indian trust property arise under federal law, because federal law creates plaintiffs' right to the trust property and provides a private right of action against non-Indians who interfere with trust property.  Plaintiffs' theory is based on alleged federal common law, not a federal statute, and even under plaintiff's theory a federal common law claim exists only if several conditions are present.  Plaintiffs argue that the federal government has a special relationship with Indians and Indian tribes, and the federal government has assumed trust obligations to manage property held in trust for Indians.  Plaintiffs rely on this relationship and the federal government's obligation to manage Indian trust property as the basis for the imposition of trust law against federal actors charged with the supervision and control of trust property.  Plaintiffs claim that trust law "includes application of the general principles of trust law, as identified in the *Restatement of the Law of Trusts* and other treatises."  Dkt. # 39, at 11.  Applying the Restatement (Second) of Trusts § 177, plaintiffs claim that a trust beneficiary has the right to "compel the trustee to perform his duties as trustee."  Id. at 12.  Plaintiffs allege that they "repeatedly" asked the trustee, the BIA, to stop Bingham and the Estate from removing chat from the Chat Piles and the BIA took no action on their requests.  This leads to the final step of plaintiff's legal theory, the Restatement (Second) of Trusts § 282, which states:

> (1) Where the trustee could maintain an action at law or suit in equity or other
> proceeding against a third person if the trustee held the property free of trust, the

6

beneficiary cannot maintain a suit in equity against the third person, except as stated in Subsections (2) and (3).

(2) If the trustee improperly refuses or neglects to bring an action against the third person, the beneficiary can maintain a suit in equity against the trustee and the third person.

(3) If the trustee cannot be subjected to the jurisdiction of the court or if there is no trustee, the beneficiary can maintain a suit in equity against the third person, if such suit is necessary to protect the interest of the beneficiary.

Plaintiffs argue that the trustee has failed to bring claims for accounting, conversion, and for declaratory and injunctive relief against Bingham and the Estate, and plaintiffs may pursue these claims under general trust principles recognized under federal common law.

Defendants do not dispute plaintiffs' argument to the extent that plaintiffs claim that the federal government has a role in managing land or property held in trust for Indians.  It is well established that land or property held in trust for Indian tribes or tribal members is subject to federal regulation, and the federal government has corresponding trust duties to manage the property for the benefit of those Indian tribes and tribal members.  However, this does not mean that federal courts have jurisdiction over all disputes concerning Indians or Indian property.  United States v. Navajo Nation, 537 U.S. 488 (2003); see also COHEN'S HANDBOOK OF FEDERAL INDIAN LAW, § 7.04[1](a) (2005) ("Despite the pervasive influence of federal law in Indian affairs, federal courts jurisdiction over cases involving Indians and Indian affairs is not automatic.").  The former General Allotment Act, now repealed but formerly codified at 25 U.S.C. § 331, created only a bare trust between the federal government and Indian tribes or tribal members, and did not give rise to a right to recover monetary damages from the federal government for alleged mismanagement of trust property. United States v. Mitchell, 445 U.S. 535 (1980) (Mitchell I).  However, the federal government may voluntarily assume trust obligations that can be enforced by Indian tribes or tribal members if the

7

federal government enacts statutes or regulations evidencing an intent to control the disposition of trust assets.  United States v. Mitchell, 463 U.S. 206 (1983) (Mitchell II).  The existence of a general trust relationship, rather than simply a bare trust, may also be shown by statutory language giving the federal government discretionary authority to dispose of trust assets.  United States v. White Mountain Apache Tribe, 537 U.S. 465, 474-75 (2003).  If a general trust relationship is shown to exist, one of the fundamental duties of the trustee is to "preserve and maintain trust assets," and the federal government may be held liable for retrospective monetary damages if this duty is breached. Id. at 475-76.

However, neither the BIA nor any federal officials are still parties to this case and, even if the Court assumes that the federal government exercises elaborate control over chat, this does not automatically create a federal claim against non-Indians who might interfere with chat held in trust for tribal members.  There is no dispute that Oklahoma law permits an aggrieved party to seek an accounting or sue for conversion of property, and neither Bingham nor the Estate challenge plaintiffs' right to assert state law claims against them.  See Fleet v. Sanguine, Ltd., 854 P.2d 892, 896 n.17 (Okla. 1993) (stating that the Oklahoma Supreme Court has recognized a common law claim for equitable accounting); Steenbergen v. First Fed. Sav. & Loan of Chichasha, 753 P.2d 1330 (Okla. 1987) (describing common law claim of conversion under Oklahoma law).  Plaintiffs do not invoke the Court's jurisdiction under 28 U.S.C. § 1332, and the complaint contains no allegations that would support the exercise of diversity jurisdiction.  Thus, plaintiffs may not rely on state law claims as an independent basis for federal subject matter jurisdiction and must show that federal law authorizes Indian tribes or tribal members to bring a claim against non-Indians for accounting or conversion before the Court may exercise subject matter jurisdiction over this case.

8

Plaintiffs argue that federal common law creates their claim for accounting based on general trust principles that allows a trust beneficiary to bring a claim against third-parties if the trustee refuses to do so. Plaintiffs previously alleged claims for accounting against the federal defendants, but those claims were dismissed due to plaintiffs' failure to exhaust administrative remedies. Plaintiffs rely on the Court's ruling dismissing the federal defendants to make two separate arguments that their accounting claims arise under federal law, and both arguments are based on Restatement (Second) of Trusts § 282. Under § 282(2), plaintiffs argue that the trustee has refused to comply with its obligation to bring a claim against Bingham and the Estate, and this allows plaintiffs to bring claims for accounting and conversion directly against the non-Indian defendants. They also argue that the federal defendants are not subject to this Court's jurisdiction, and they may bring claims against Bingham and the Estate under § 282(3).

Plaintiffs have not shown that the BIA improperly refused to bring claims against Bingham and the Estate, and § 282(2) does not apply. The general rule is that the "trustee has exclusive authority to maintain an action on behalf of the trust against a third party." Braddock Financial Corp. v. Washington Mut. Bank, 637 F. Supp. 2d 924, 931 (D. Colo. 2009). Section 282 is an exception to the general rule and allows a trust beneficiary to bring a claim directly against a third party if the trustee "improperly refuses or neglects" to bring such a claim. However, a trust beneficiary must show that the trustee's failure to file suit was "improper" or "wrongful" before the trust beneficiary will have standing to pursue his or her own claims against third parties. See Ricke v. Armco Inc., 92 F.3d 720, 726 (8th Cir. 1996); Cates v. Int'l Tel. & Tel. Corp., 756 F.2d 1161, 1178 (5th Cir. 1985); Slaughter v. Swicegood, 591 S.E.2d 577 (N.C. App. 2004). Plaintiffs argue that the general rule preventing suits by trust beneficiaries does not apply because the BIA has

ignored plaintiffs' requests for an accounting or to halt the removal of chat from the Chat Piles.  Dkt. # 39, at 18.  The Court notes that plaintiffs have not cited any federal cases actually recognizing such claims in the context of tribal law, and § 282 has not been the basis for any claim against third parties in any reported case involving Indian tribes or tribal members.  However, even if such claims are permissible, plaintiffs have not shown that the BIA improperly refused or neglected to bring claims against Bingham and the Estate.  Plaintiffs state that they made repeated demands for the BIA to provide an accounting and to intervene on their behalf to stop the removal of chat, but the BIA refused to take action.  In a separate opinion and order, the Court found that plaintiffs had only notified the Miami Agency of the BIA of their requests and they failed to exhaust their administrative remedies with the BIA and the Department of the Interior before filing this case.  Dkt. # 37, at 17.  Thus, it is not clear that plaintiffs properly invoked the BIA's trust obligations and they have not shown that the trustee improperly refused to file the claims that plaintiffs have alleged against Bingham and the Estate.

Plaintiffs also argue that the federal defendants are not subject to the jurisdiction of the Court and this allows plaintiffs to assert claims for accounting directly against Bingham and the Estate.  However, the mere fact that the Court dismissed plaintiffs' claims against the federal defendants for lack of subject matter jurisdiction does not turn plaintiffs' accounting claim into a federal common law claim.  The commentary to § 282 explains when a party may bring a claim against a third party if the trustee is not subject to the jurisdiction of the court:

> f. *Where the trustee is not subject to the jurisdiction.* If the trustee cannot be subjected to the jurisdiction of the court, and a suit is necessary to protect the interest of the beneficiary, the beneficiary can maintain a suit in equity against the third person without joining the trustee, since a court of equity will not permit the wrongdoer to escape liability as a result of the accidental circumstance that the trustee is not available. Thus, if the trustee has disappeared and cannot be found, the

> beneficiary can maintain a suit in equity against a third person who has committed a tort with respect to the trust property, or against a third person who has incurred a liability upon a contract held in trust. The mere fact that the trustee cannot be subjected to the jurisdiction of the court does not entitle the beneficiary to maintain a suit against a third person if the trustee can be found and does not improperly refuse or neglect to bring an action against the third person and there is no emergency making it necessary to bring the suit before the trustee could bring it, since the beneficiary can maintain a suit against a third person only if such suit is necessary to protect his interest.

Restatement (Second) of Trusts § 282 cmt. f.  The Court has already determined that the trustee did not improperly refuse to bring a suit against a third party, because plaintiffs did not make a proper request for the trustee to act.  If plaintiffs exhaust their administrative remedies and the BIA refuses to take action, plaintiffs may have standing to assert claims against Bingham and the Estate.  At this time, plaintiffs have not invoked the BIA's obligation to file claims to protect the trust corpus and § 282(3) also does not provide a basis for plaintiffs to assert claims against Bingham or the Estate.

Plaintiffs offer an alternative theory allowing them to bring a conversion claim against Bingham and the Estate based on federal law recognizing a right for Indians to sue to enforce rights in aboriginal lands.  Dkt. # 39, at 14.  They rely on County of Oneida, New York v. Oneida Indian Nation of New York State, 470 U.S. 226 (1985) (Oneida II), to support their argument that Indians may assert claims for trespass or conversion against non-Indians who interfere with an Indian's possession or ownership of trust property.  Oneida II concerned claims for conversion brought by the Oneida Nation of New York State and other Indian tribes alleging that the State of New York took possession of certain lands designated for the tribes in violation of federal law.  Id. at 229-30. The Supreme Court recognized that "Indians have a federal common-law right to sue to enforce their aboriginal land rights" and this includes the right to bring an action "for an accounting of 'all rents, issues and profits' against trespassers on their land."  Id. at 235-36 (quoting United States v. Santa

Fe Pacific R. Co., 314 U.S. 339 (1941)).  However, plaintiffs are not seeking to enforce aboriginal land rights.  The Ninth Circuit has interpreted Oneida II to mean that all claims for trespass on Indian lands are federal common law claims.  See United States v. Milner, 583 F.3d 1174, 1182 (9th Cir. 2009).  In a recent opinion, the Tenth Circuit cited Milner with approval to the extent that Milner recognized a federal common law trespass claim for disputes over the ownership of allotted land.  Nahno-Lopez v. Houser, 625 F.3d 1279, 1282 (10th Cir. 2010).

Plaintiffs' reliance on Oneida II and Milner is misplaced.  This is not a case in which plaintiffs are seeking to enforce rights to aboriginal lands or are asking the Court to resolve an ownership dispute concerning allotted land.  Both Oneida II and Milner involved claims for trespass against subsequent landowners of property granted to Indian tribes by treaty.  This case concerns the rights of non-Indians to remove and sell mixed trust and non-Indian property and does not involve allegations of trespass on ancestral or aboriginal lands.  Plaintiffs have not shown that federal law gives rise to common law claims against Bingham or the Estate, and they must assert some other basis for the Court to exercise federal questions jurisdiction over this case.

Plaintiffs argue that the case involves a substantial and disputed question of federal law and the Court should exercise jurisdiction based on Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005).  In Grable, the Supreme Court recognized a narrow exception to the general rule that "arising under" jurisdiction exists only when federal law creates the plaintiff's right to relief.  The plaintiff, Grable & Sons Metal Products, Inc., filed a quiet title action against Darue Engineering Manufacturing alleging that Darue obtained title to real property following an invalid seizure of the real property by the Internal Revenue Service.  Id. at 310.  In order for a federal court to independently exercise jurisdiction over a state law claim under § 1331,

a court must decide if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314.  A substantial federal question is one "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." Id. at 313.  The Supreme Court was clear that not every dispute over property in which a federal statute is at issue is a federal question, and "arising under" jurisdiction is appropriate only when there is a substantial dispute as to the "validity, construction, or effect" of the federal statute. Id. at 315 n.3.  Even if there is a substantial and disputed issue of federal law, a federal court should exercise jurisdiction only if "federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. Id. at 314.

In Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677 (2006), the Supreme Court clarified that Grable created a "special and small category" of cases involving state law claims only suitable for jurisdiction under § 1331. Id. at 699.  The Court described Grable as a case that presented a "pure issue of law . . . that could be settled once and for all thereafter would govern numerous tax sale cases." Id. at 700.  In contrast, Empire presented a fact-specific situation that incidentally involved a federal statute, and the state court was presumed to be competent to hear issues of federal law that might arise in a case otherwise based on state law. Id. at 701.  The Tenth Circuit has found that Grable permitted a district court to exercise federal question jurisdiction over state law claims of unjust enrichment when the plaintiff's claims were based on allegations that the defendant, a railroad company, violated a right-of-way created by a federal statute. Nicodemus v. Union Pacific Corp., 440 F.3d 1227 (10th Cir. 2006).  Based on Grable, another federal district court

13

has found that a personal injury suit filed against the Comanche Nation Casino presented a substantial and disputed federal question, because decisions by the Oklahoma Supreme Court had created a dispute as to whether such claims should be heard in state or federal court and this jurisdictional question presented a disputed federal question sufficient for the court to exercise jurisdiction under § 1331. Muhammad v. Comanche Nation Casino, ___ F. Supp. 2d ___, 2010 WL 3824171 (W.D. Okla. Sep. 28, 2010).

Plaintiffs' claims undoubtedly raise issues of federal law but this does not mean that this Court may automatically exercise federal question jurisdiction over them. Plaintiffs have alleged claims for an accounting from a co-tenant and conversion, but the Court has determined that plaintiffs have not alleged any basis to pursue these claims under federal law.  Thus, the Court must look to Oklahoma law for the parameters of plaintiffs' accounting and conversion claims and determine if plaintiffs' state law claims require the resolution of a substantial and disputed question of federal law.  Plaintiffs filed this case in federal court and have the burden under Grable to show that there is a substantial and disputed question of federal law that permits this Court to exercise jurisdiction over their state law claims.

Under Oklahoma law, "[a] tenant in common receiving the common property, either wrongfully or by consent, holds it as trustee for his co-tenant to the extent of the interest of the co-tenant, who may compel an accounting." Ludey v. Pure Oil Co., 11 P.2d 102, 104 (Okla. 1931). Any co-tenant may seek an accounting to "adjust mutual accounts and to strike a balance" among co-tenants.  Cline v. McKee, 98 P.2d 25, 27 (Okla. 1940).  While Oklahoma law does not clearly specify the elements of an equitable accounting claim, it appears that an essential element of an accounting claim is that the plaintiff be a co-tenant, or one with a right of ownership or possession

14

to common property.  In this case, there is no dispute that federal law creates plaintiffs' right to title in the chat, but this does not show that there is a substantial and disputed question of federal law. In fact, defendants do not dispute that plaintiffs have a right under federal law to some of the chat. The issue in dispute appears to be a factual issue as to the percentage of the Chat Piles owned by each party.  See Dkt. # 2, at 5.  Thus, plaintiffs' right to an accounting is governed by state law and the disputed issue is factual issue, rather than a legal issue that must be resolved under federal law. Plaintiffs have not identified a substantial and disputed question of federal law in their accounting claim that would govern the result in any other case and, under Grable, the Court may not exercise jurisdiction over plaintiffs' accounting claim.

Plaintiffs' also allege a claim for conversion against Bingham and the Estate.  Under Oklahoma law, "conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein, . . . , or any wrongful exercise or assumption of authority personally or by procurement, over another's goods, depriving him of the possession, permanently or for an indefinite time." Tillman v. Shofner, 90 P.3d 582, 583 (Okla. Civ. App. 2004) (quoting United States Zinc, Co. v. Colburn, 255 P. 688, 689 (1927)).  A defendant's good or bad faith in exerting control over another's property is irrelevant. Steenbergen, 753 P.2d at 1332.  Plaintiffs argue that defendants have removed chat from the Chat Piles without BIA approval, and that this action was prohibited by federal law. Dkt. # 24-25.  However, plaintiffs have cited authority that these actions would be wrongful if they occurred as alleged by plaintiff, and there is no disputed issue of federal law that BIA approval is required before a co-tenant may dispose of property containing trust and non-Indian property. See LaMotte v. United States, 256 F. 5 (8th Cir. 1919); Cohen's Handbook of Federal Indian Law § 16.04[3] (2005).  This case is

15

primarily complicated by a factual dispute as to whether the BIA will intervene on plaintiffs' behalf after a proper request for the BIA to act, but there is little dispute that federal law requires BIA approval before Bingham and the Estate may remove chat. Thus, under <u>Grable</u> and <u>Empire</u>, there is not a substantial and disputed issue of federal law that requires resolution by a federal court. Federal law may inform an element of plaintiffs' state law conversion claim, specifically the wrongfulness of Bingham's and the Estate's removal of chat, but the issue is not sufficiently substantial or disputed that this Court should exercise jurisdiction over plaintiffs' claim.

Although the parties have not addressed the applicability of the Anti-Injunction Act, 28 U.S.C. § 2283 (AIA), the Court finds that this is also a relevant consideration. The Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." 28 U.S.C. § 2283. The Supreme Court has stated that the AIA:

> has existed in some form since 1793, see Act of Mar. 2, 1793, ch. 22, § 5, 1 Stat. 335, is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts. It represents Congress' considered judgment as to how to balance the tensions inherent in such a system. Prevention of frequent federal court intervention is important to make the dual system work effectively. By generally barring such intervention, the Act forestalls "the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court."

<u>Chick Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 146 (1988). Unless one of the three statutory exceptions to the AIA applies, the statute poses an "absolute ban on federal injunctions against pending state court proceeding[s]." <u>Phelps v. Hamilton</u>, 122 F.3d 1309, 1325 (10th Cir. 1997).

Plaintiffs take the position that they may not raise issues of federal law in the state court action, and argue that the state court action has no impact on this Court's authority to grant the relief

plaintiffs seek.  Dkt. # 36, at 7.  However, this argument was based on their inability to join the federal defendants as parties to the state court action and this argument is moot based on the procedural posture of this case.  The federal defendants are no longer parties to this case, and plaintiffs' judicial remedies are limited to those they may seek from Bingham and the Estate.  The issues left for resolution are essentially the same issues that will have to be decided by the state court, and the state court has already acted by issuing an injunction permitting Bingham and the Estate to remove chat from the Chat Piles.  While plaintiffs seek equitable and declaratory relief, they also ask this Court to enjoin Bingham and the Estate from removing chat from the Chat Piles.  This would clearly conflict with the injunction issued in the state court action and the Court lacks the authority to grant this relief under the AIA, because it would effectively set aside the state court injunction and enjoin the state court plaintiffs from proceeding with the state court action.

This case clearly presents issues of federal law, but that does not convert plaintiffs' state law claims for accounting and conversion into federal claims.  The law is clear that not every property dispute between an Indian and non-Indian must be heard in federal court, and this is an example of case in which there are no substantial and disputed issues of federal law.  See Oneida Nation on New York State v. Oneida County, New York, 414 U.S. 661, 676-77 (1974) (Oneida I) ("Once patent issues [after allotment], the incidents of ownership are, for the most part, matters of local property law to be vindicated in local courts, and in such situations it is normally insufficient for 'arising under' jurisdiction merely to allege that ownership or possession is claimed under a United States patent.").  The federal issues primarily concern the obligations of the federal defendants to take certain actions requested by plaintiffs, but the federal defendants are no longer parties to this case.  Plaintiffs have not shown that their remaining claims for accounting or conversion against Bingham

17

and the Estate arise under federal law or involve a substantial and disputed issue of federal law. Thus, the Court finds that it lacks subject matter jurisdiction over this case.

**IT IS THEREFORE ORDERED** that the Court lacks subject matter jurisdiction over this case, and plaintiffs' claims are **dismissed without prejudice**. A separate judgment of dismissal is entered herewith.

**DATED** this 29th day of December, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT