IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES E. GILMORE; TAMMY S. GILMORE SPRINGER; JOANNA K. STAND, individual owners in Indian trust property,<br><br>Plaintiffs,<br><br>v.<br><br>CATHY J. WEATHERFORD, personal representative of the estate of Joseph E. Mountford, deceased; BINGHAM SAND & GRAVEL COMPANY, INC., a foreign corporation;<br><br>Defendants. | Case No. 10-CV-257-JED-PJC |

**OPINION AND ORDER**

Before the Court are motions to stay proceedings filed by both plaintiffs and defendants (Doc. 58, 60), defendants' motion to decline supplemental jurisdiction over plaintiffs' accounting claim (Doc. 56), and defendants' motion to dismiss (Doc. 61).

**I.   Background**

This case concerns the ownership and alienation of a by-product of lead and zinc mining, known as chat, or mine tailings. Chat is economically valuable as fill and gravel, but it can also be hazardous without refinement. Privileges of ownership over two piles of chat in northeastern Oklahoma -- the Sooner and Ottawa piles -- are in dispute in this case. Due to the intermixing of chat from various parcels of land, the chat piles at issue are "commingled," as they contain both restricted chat and unrestricted chat. Plaintiffs, James E. Gilmore, Tammy S. Gilmore Springer, and Joanna K. Stand, are members of the Quapaw Tribe and own their property on an undivided "restricted" basis, which prevents them from freely alienating their chat without the authorization of their trustee, the United States Secretary of the Interior. 25 U.S.C. § 415. Defendants,

Bingham Sand & Gravel Co., Inc. ("Bingham") and the Estate of Joseph Mountford, represented by defendant Cathy J. Weatherford ("Estate"), own their land privately on an unrestricted basis. As such, Bingham and the Estate began removing chat from the Ottawa and Sooner piles, respectively, in 2001 or 2002.

Precedent suggests that the restricted Indian owners may retain a proportional share of the removed chat. In 2002, a Bureau of Indian Affairs (BIA) letter from the acting field representative described the commingled chat as follows: "Every interest, restricted and unrestricted, is undivided, and therefore, cannot be defined or described, except by partitioning the chat pile in proportionate shares. When you remove one grain of material, you move both restricted and unrestricted ownership." According to the BIA, the Ottawa pile is divided as follows: Bingham owns 76.237%, 78 restricted owners own 16.565%, and the remainder by an unknown number of unrestricted owners. The Sooner pile is divided as follows: the Estate owns 61.97583%, 34 restricted owners own 37.43667%, and the remainder is owned by an unknown number of unrestricted owners. The plaintiffs dispute these percentages.

Plaintiffs assert that Bingham and the Estate removed restricted chat from the Ottawa and Sooner piles without authorization from the BIA and without proportional compensation to the plaintiffs. Plaintiffs further assert that the BIA, as plaintiffs' trustee, failed to take appropriate action to stop the removal of chat by defendants. In April 2010, plaintiffs filed suit against Department of the Interior officials, BIA officials, Bingham, and the Estate, asserting six causes of action: (1) an accounting claim against the BIA; (2) a challenge under the APA, 5 U.S.C. § 704, seeking to compel an agency action; (3) an accounting claim against the Estate and Bingham; (4) a conversion claim against Bingham; (5) a claim for injunctive and declaratory relief; and (6) a claim for attorneys' fees.

Both the federal and the private defendants (Bingham and the Estate) moved to dismiss. This Court (Honorable Claire V. Eagan presiding) dismissed the plaintiffs' claims against the federal defendants due to plaintiffs' failure to exhaust their administrative remedies as to those defendants. In addition, the Court determined that it lacked subject matter jurisdiction over plaintiffs' state law claims against the remaining, non-federal defendants. Plaintiffs appealed this Court's ruling to the Tenth Circuit.[1]

On appeal, the Tenth Circuit reviewed the Court's dismissal for lack of subject matter jurisdiction *de novo* and affirmed in part and reversed in part. Specifically, the Tenth Circuit affirmed the dismissal of the federal defendants, including the Secretary of the Interior, and found no abuse of discretion by requiring an exhaustion of administrative remedies. The Tenth Circuit noted that, "given the need to weigh numerous interests and potentially to consult with another agency [the Environmental Protection Agency (EPA)], […] the BIA's expertise and its development of an administrative record would greatly assist in the disposition of this dispute." *Gilmore v. Weatherford*, 694 F.3d 1160, 1168 (10th Cir. 2012).

However, the Tenth Circuit reversed the district court's dismissal of the plaintiff's conversion claim against the private defendants, concluding that the "conversion claim presents a substantial and disputed question of federal law sufficient to confer federal question jurisdiction under 28 U.S.C. § 1331." 694 F.3d at 1176. Thus, the court determined that dismissal of all claims against Bingham and the Estate was inappropriate, because "if any one claim within Plaintiffs' complaint supports federal question jurisdiction, a federal court may assert jurisdiction

---

[1] Concurrent with the Tenth Circuit's review of this case, one of the plaintiffs, James E. Gilmore, acting in his official capacity as President of the Quapaw Tribal Remediation Authority (QTRA), filed an appeal with the BIA on or about January 13, 2012. (Doc. 59-6.) The administrative proceeding was still pending when the case was remanded to this Court from the Tenth Circuit.

over all the claims, including any alleged state-law claims, arising from the same core of operative facts." *Id.* at 1176 (quoting *Nicodemus v. Union Pacific Corp.*, 440 F.3d 1227, 1235, n.8 (10th Cir. 2006)).  The Tenth Circuit concluded that, though the accounting claim did not depend on any issue of federal law, plaintiffs' conversion claim presents a substantial question of federal law supporting subject matter jurisdiction.  The Tenth Circuit thus remanded the case to this Court, reserving to this Court issues of "the propriety of exercising supplemental jurisdiction" over the accounting claim and whether "the claims against the private defendants should be stayed pending exhaustion of administrative remedies."  694 F.3d at 1176-77, n.6.

On remand, the Court requested a joint status report from the parties and any briefing for proposed motions. (Doc. 52).  Plaintiffs filed a motion to stay proceedings pending exhaustion of administrative remedies.  (Doc. 60).  Thereafter, defendants filed a motion to dismiss, a motion to decline supplemental jurisdiction, and a motion to stay pending exhaustion of administrative remedies. (Doc. 56, 58, 61).  These motions are at issue.

## II. Defendants' Motion to Dismiss

Following remand, Bingham and the Estate filed a new dismissal motion, asserting that the plaintiffs lack standing. (Doc. 61).  The motion is based upon the defendants' argument that plaintiffs have no standing to sue without first requesting the action from their trustee.  Though the Tenth Circuit determined, following *de novo* review, that the conversion claim necessarily raises a stated federal issue over which subject matter jurisdiction exists and that the Court erroneously dismissed all of plaintiffs' claims, the defendants now argue that the Court previously determined that plaintiffs did not have standing.  Defendants assert that plaintiffs did not appeal, and the Tenth Circuit did not address, that jurisdictional issue, so that the issue was determined in favor of defendants under the law of the case doctrine.

4

The plaintiff responds that the Tenth Circuit did not address the specific issue because this Court's order (Doc. 41) which was appealed did not definitively determine that plaintiffs would have no standing. In support of their argument, the plaintiffs note that the Court's order that is the subject of the parties' arguments on the dismissal motion provides, in part:

> It is not clear that plaintiffs properly invoked the BIA's trust obligations and they have not shown that the trustee improperly refused to file the claims that plaintiffs have alleged against Bingham and the Estate.
>
> ***
>
> If plaintiffs exhaust their administrative remedies and the BIA refuses to take action, plaintiffs may have standing to assert claims against Bingham and the Estate. At this time, plaintiffs have not invoked the BIA's obligation to file claims to protect the trust corpus and 282(3) [of the Restatement (Second) of Trusts] also does not provide a basis for plaintiffs to assert claims against Bingham or the Estate.

(Doc. 41 at 10-11). The plaintiffs also argue that the part of the Order cited by defendants was dicta, unnecessary as an alternative to the outcome of the Court's determination that federal question jurisdiction did not exist.

The undersigned was not the judge who entered the Order at issue, as the case was transferred following remand. The Court believes that both defendants and plaintiffs have offered reasonable constructions of the Court's Order. While the Tenth Circuit did not directly address this issue, plaintiffs appealed that Order and the Judgment dismissing the claims, which were discussed at length in the Circuit's decision reversing the district court's dismissal for lack of subject matter jurisdiction. The Court agrees with plaintiff that there is a reasonable construction of the Order which did not definitively determine that plaintiffs lacked standing, such that the law of the case doctrine does not clearly apply. *See United States v. Wittig*, 575 F.3d 1085, 1097 (10th Cir. 2009) ("the law of the case doctrine does not apply unless an issue

5

has been actually decided, 'either explicitly or by necessary implication'" and "does not extend to issues a previous court declines to decide.").

Moreover, as noted below, the defendants request a stay of the proceedings pending the plaintiffs' exhaustion of administrative remedies as to the federal defendants, and thus both plaintiffs and the defendants recognize the propriety of a stay, which may ultimately moot many if not all issues in this action.

Defendants' motion to dismiss (Doc. 61) is **denied** at this time.

### III. Motion to Decline Supplemental Jurisdiction over Plaintiffs' Accounting Claim

Pursuant to 28 U.S.C. § 1367, Bingham and the Estate move the Court to decline to exercise supplemental jurisdiction over plaintiffs' accounting claim. (Doc. 56, 57).

When additional claims do not depend on any issue of federal law, substantial or otherwise, but are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy," this Court can exercise supplemental jurisdiction as to those claims, unless this Court identifies an appropriate exception. 28 U.S.C. § 1367(a). The Court may decline supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; and (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

In determining whether to exercise supplemental jurisdiction over state law claims, the Court must consider such issues as "judicial economy, convenience, fairness, and comity." *Whisenant v. First National Bank & Trust Co.*, 258 F. Supp. 2d 1312, 1317 (N.D. Okla. 2003).

The most critical evaluation is whether the state courts, due to their expertise with state law issues, are better equipped to address a state law claim. *Id.*

In their motion to decline supplemental jurisdiction, Bingham and the Estate "ask this Court to exercise its discretion and decline to exercise supplemental jurisdiction over Plaintiffs' accounting claim and dismiss it without prejudice so that the Plaintiffs can pursue it in an administrative process at the BIA or the appropriate state court and to stay further proceedings in Plaintiffs' conversion claim until the accounting in completed." (Doc. 57). In essence, these defendants assert that the plaintiffs' accounting claim "substantially predominates" over the conversion claim over which the Court has federal jurisdiction, because (according to the defendants) there must be an accounting as to the plaintiffs' ownership interests in the Sooner and Ottawa chat piles before any conversion claim can be considered. (*Id.* at 4-5). Not surprisingly, plaintiffs disagree. Moreover, plaintiffs assert that "it is possible, if not likely, that [the] motion on supplementary jurisdiction will be moot, or that the issues for determination will be narrowed. A ruling at this stage in the litigation on the supplementary jurisdiction over Plaintiffs' alternative accounting claim is therefore premature." (Doc. 69 at 5-6). Plaintiffs also note that the Tenth Circuit determined that federal jurisdiction exists over the conversion claim, and plaintiffs contend that, as between the accounting and conversion claims against Bingham and the Estate, those conversion claims predominate. (*Id.*).

Under § 1367(a), the Court has supplemental jurisdiction over all claims that are so related to the claims in the action that they form part of the same case or controversy. 28 U.S.C. § 1367(a). A claim is "part of the same case or controversy" when it "derives from a common nucleus of operative facts." *Price v. Wolford*, 608 F.3d 698, 702-03 (10th Cir. 2010). The Court finds that the accounting claims derive from the same nucleus of operative facts as the

conversion claim and, to the extent that issues remain to be determined as to the plaintiffs' claims against Bingham and the Estate following exhaustion of the plaintiffs' administrative remedies, it will promote judicial economy for all claims to be litigated in one case, rather than litigated piecemeal. In addition, the Court is not convinced that the state courts are better equipped to handle accounting issues.

Accordingly, the motion to decline supplemental jurisdiction over the plaintiffs' accounting claims (Doc. 56) is **denied**.

## IV. The Parties' Motions to Stay

Following remand, the plaintiffs moved to stay pending exhaustion of administrative remedies against the federal defendants, who have been dismissed. (Doc. 60). Bingham and the Estate also filed a motion to stay (Doc. 58). Because the Tenth Circuit dismissed the federal defendants due to plaintiffs' failure to exhaust, the plaintiffs assert that a stay of the claims against the Estate and Bingham "not only would avoid unnecessary litigation of issues, including issues that may be resolved in the administrative process, but it would also protect the Restricted Owners from the prejudice that would result from a premature adjudication...." (*Id.* at 1-2). As noted, the Tenth Circuit specifically indicated that this issue is appropriate for this Court to determine in the first instance. *Gilmore*, 694 F.3d at 1176-77, n.6.

Both the plaintiffs and the defendants present numerous authorities supporting a court's powers to stay a case where administrative exhaustion is necessary and will assist in preserving the parties' resources, will likely narrow remaining issues, and will promote judicial economy. (*See* Doc. 60 at 3-12). Thus, all parties are in agreement that the Court has the authority to stay this case pending exhaustion of administrative remedies as to the federal defendants. (*See* Doc. 58, 59, 60, 67). *See also Private Med. Care Found., Inc. v. Califano*, 451 F. Supp. 450, 696

(W.D. Okla. 1977) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936)); *see also Coseka Res. (U.S.A.) Ltd. v. Jordan*, 75 F.R.D. 694, 696 (W.D. Okla. 1977).

In light of the parties' corresponding motions, the Court determines that a stay of this case pending plaintiffs' exhaustion of administrative remedies as to the dismissed federal defendants appears to be the best course. As the plaintiffs note, whatever the outcome of administrative proceedings, the determination of those proceedings is very likely to have some impact upon the resolution of the plaintiffs' claims against the Estate and Bingham. As the Tenth Circuit noted, "the BIA's expertise and its development of an administrative record would greatly assist in the disposition of this dispute." *Gilmore*, 694 F.3d at 1168.

The parties' requests for a stay (Doc. 58, 60) are **granted**.

**IT IS THEREFORE ORDERED THAT** this case is stayed pending the plaintiffs' exhaustion of administrative remedies. The Clerk shall administratively close the case pending further Order of this Court.

**SO ORDERED** this 30th day of September, 2014.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE